In the Matter of the Application of AMELIA S. LANSING, Respondent, for Leave to Issue Execution on a Judgment Obtained against THOMAS E. LOUGHLIN, as Administrator, etc., of ELLEN LOUGHLIN, Deceased, Appellant. (Appeal No. 1).

First Department, December 5, 1919.

Surrogate's Court — judgment against administrator — motion for leave to issue execution — when determination as to assets of estate prerequisite.

Where on an application to the Surrogate's Court for leave to issue execution on a judgment against an administrator it is merely shown that his petition for letters of administration stated that the estate consisted of specified amounts of real and personal property at the time of his appointment, but there is no proof that he was in possession of any assets when the application was made and, on the contrary, there is no answer to his affidavit alleging that he had parted with all the assets and claimed to own personally part of the property listed as belonging to the estate, the leave to issue execution should not be granted, for an issue is presented which requires proof to be taken by the surrogate through an intermediate accounting as to what assets, if any, still remain in the hands of the administrator and the proper charges against the same.

Such application, *it seems*, will be granted not only if the adminstrator has assets on hand belonging to the estate but also if he has misapplied any of the funds applicable to the payment of the judgment.

APP. DIV.— VOL. CLXXXIX.        42

APPEAL by Thomas E. Loughlin, as administrator, etc., from an order of the Surrogate's Court of the county of New York, entered in the office of said court on the 15th day of July, 1919, granting leave to Amelia S. Lansing to issue execution on a judgment obtained against Thomas E. Loughlin, as administrator, etc., of Ellen Loughlin, deceased

*Herman Siefke, Jr.,* of counsel [*Rabenold & Scribner,* attorneys], for the appellant.

*William C. Stone* [*Lucille C. Bunzl* with him on the brief], for the respondent.

DOWLING, J.:

Ellen Loughlin died in the city of New York on June 2, 1914, intestate, and on October 23, 1914, letters of administration were issued by the Surrogate's Court of New York county to her husband, Thomas E. Loughlin, who duly qualified as such administrator. Amelia S. Lansing commenced an action against Loughlin, as administrator, which resulted in a judgment obtained by her against him November 1, 1918, in the sum of $3,796.42, a transcript whereof was on May 15, 1919, duly filed in the office of the clerk of the county of New York. On May 17, 1919, Amelia S. Lansing made application to the Surrogate's Court, New York county, for leave to issue an execution to the sheriff of New York county upon said judgment. The petition contained only the following averments as to the administrator's possession of property belonging to the estate:

" On information and belief, that the said Thomas E. Loughlin, as such administrator, came into and has in his possession assets of the estate of the said Ellen Loughlin (deceased), consisting of money and other personal property applicable to the payment of said judgment.  *  *  *

" That annexed hereto and made a part hereof is the affidavit of William C. Stone, verified the 15th day of May, 1919, containing statements of the assets of the said Ellen Loughlin, deceased, in the hands of the said Thomas E. Loughlin, as administrator as aforesaid, which is the source of petitioner's information and the grounds of her belief."

The affidavit of William C. Stone, referred to, set forth that he had examined the records of the Surrogate's Court

and found that in his petition for letters of administration Loughlin had stated that his late wife left real property of the value of $27,000, and personalty of the value of $4,000; that Loughlin's schedules as administrator show that the intestate had equity in real property amounting to $7,100, and cash in four savings banks aggregating $2,454.20, whereof $2,273 was a deposit in the Franklin Savings Bank; that the funeral and administration expenses amounted to $350. The records also showed that the appraiser, officially appointed, had fixed the values of the realty and personalty at the sums last named and the expenses at $436.35, and that the administrator had failed to file any account.

The administrator submitted an affidavit in opposition, in which he set forth that when he was appointed the liabilities of the estate exceeded its assets, and that he had no notice of petitioner's claim until April 23, 1917. As to the deposit in the Franklin Savings Bank the administrator alleged: " The cash on deposit in the name of the decedent at the time of her death with the Franklin Savings Bank was the property of your deponent personally and represented moneys derived from your deponent's beer-saloon business which was deposited from time to time in his wife's name as a matter of convenience, and all of this money belonged to your deponent individually." He also set forth that he had used his own funds to defray the expenses of the estate, including funeral expenses of $948, a monument costing $950, and counsel fees and expenses of administration amounting to $400; in addition to this he had paid doctor's bills and other small accounts.

Upon the proof before the surrogate, we do not think he was justified in directing the issuance of the order herein. While there was sufficient to show that the administrator had admitted that there was some property belonging to the intestate at the time of his appointment, there was no adequate proof that he had in his possession any assets of the estate when the application was made. On the contrary, there was nothing to offset the administrator's affidavit that he had parted with all the assets of the estate before the judgment was obtained or the application made. That of course would not be a final answer to the application, nor could the application be defeated simply because the administrator claimed

that he personally owned part of the property theretofore listed as belonging to the estate.  But on the record before us an issue was presented requiring proof to be taken in an appropriate manner before the surrogate finally acted.  The proper method was indicated in *Matter of Warren* (105 App. Div. 582), namely, by requiring an intermediate accounting to be filed by the administrator, upon which the question of what assets, if any, remained in his hands, the value of the original estate and what should be properly included therein, and the proper charges and payments against the same, could all be judicially determined.  For of course the application would be granted, not only if the administrator had assets on hand belonging to the estate, but also if he had misapplied any of the funds applicable to the payment of the judgment.

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the matter remitted to the Surrogate's Court for the action indicated.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and proceeding remitted to surrogate for further action in accordance with the opinion of this court.